Ginger G. Mooney, OSB # 031261
Ginger G. Mooney, LLC
1017 May Street, Suite 200
Hood River, Oregon 97031
Telephone (541) 716-5650
Fax (503) 389-1585
contact@mooneylaw.org
Attorney for Nicolette Heslen

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **NICOLETTE DAWN HESLEN,** | USDC Case No. 3:22-cv-508 |
| Plaintiff, | |
| v. | **CIVIL RIGHTS COMPLAINT** |
| **COLETTE PETERS**, Oregon Department of Corrections (ODOC); **BRIAN BELLEQUE**, ODOC Deputy Director (former); **HEIDI STEWARD**, ODOC Deputy Director; **MICHAEL GOWER,** ODOC Assistant Director of Operations (former); **ROB PERSSON,** ODOC Assistant Director of Operations, ODOC Westside Institutions Administrator (former), Superintendent Coffee Creek Correctional Facility (CCCF) (former); **PAULA MYERS**, Superintendent Coffee Creek Correctional Facility (CCCF) (former); **ERICKA SAGE**, ODOC PREA Coordinator; **FRANKLIN J. ESCALONA,** ODOC Correctional Officer, Formerly ODOC Kitchen Coordinator; **LEANNE EDISON**, ODOC Kitchen Coordinator; **CHEYLAN EDISON**, ODOC Kitchen Coordinator (former); **ESEQUIEL PALOMO**, ODOC Kitchen Manager; **JOHN/JANE DOE**, ODOC Kitchen Coordinators; **JOHN/JANE DOE**, ODOC Bakery Manager; **JOHN/JANE DOE,** Security Staff; **JOHN/JANE DOE**, ODOC Behavioral Health Counselors; **OREGON DEPARTMENT OF** | 42 U.S.C. §§ 1983, 1985 (Violation of Civil Right under Color of Law), Eighth Amendment Failure to Protect, Failure to Supervise, PREA Violations, Fourteenth Amendment Due Process<br><br>**DEMAND FOR JURY TRIAL** |

**Page 1 of 41 – CIVIL RIGHTS COMPLAINT**

**CORRECTIONS** and the **STATE OF OREGON**, each sued in their individual and official capacities,

    Defendants.

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff by and through her attorney, Ginger G. Mooney, brings her complaint herein. Plaintiff states and alleges as follows:

## INTRODUCTORY STATEMENT

**1.**

This is a civil rights action brought by Plaintiff, Nicolette Dawn Heslen, in which she seeks relief for the defendants' violations of her rights secured by the United States Constitution, including the First, Eighth and Fourteenth Amendments, by the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1985.

**2.**

Plaintiff, a vulnerable person, is an Adult in Custody (AIC) in Coffee Creek Correctional Facility (CCCF), an Oregon Department of Corrections (ODOC) facility. Plaintiff was sexually harassed, subjected to sexual touching, and stalked by former Correctional Officer (CO) and CCCF Kitchen Coordinator Franklin J. Escalona, who was employed by ODOC. Defendants failed to provide adequate supervision and training of staff and failed to provide adequate safeguards and protections for Plaintiff from Defendant Escalona, who sexually harassed, sexually touched, and stalked Plaintiff between 2018 until 2020 while employed at CCCF. Defendants failed to recognize and respond to obvious signs Defendant Escalona was engaging in inappropriate sexual touching, sexual harassment, and stalking of Plaintiff, which was known to many staff members, while she was confined or detained in CCCF and while she was on transitional leave from CCCF. Defendants failed to provide legally mandated counseling as required by the provisions of the Prison Rape

**Page 2 of 41 – CIVIL RIGHTS COMPLAINT**

Elimination Act (PREA) for the benefit and protection of the Plaintiff and subjected Plaintiff to recurring psychological damage by failing to treat her ongoing psychological injuries arising from the sexual abuse.

### 3.

Plaintiff is filing this suit in her own name. Plaintiff seeks declaratory and injunctive relief, nominal, compensatory, and punitive damages, including reasonable costs, attorney's fees and disbursements, pursuant to 42 U.S.C. §1988.

## JURISDICTION AND VENUE

### 4.

Jurisdiction exists under 28 U.S.C. § 1331 because this action arises under the laws of the United States. This Court has jurisdiction over Plaintiff's claims under 28 U.S.C. § 1343 because Plaintiff has brought this action to seek redress for the deprivation of rights secured by the United States Constitution.

### 5.

Venue is proper under 28 U.S.C. § 1391(b)(2), because the acts and omissions alleged herein primarily occurred in Washington County, Oregon. Further, one or more of the defendants reside in the District of Oregon and Plaintiff's claims for relief arose in this district.

## PARTIES

### 6.

Plaintiff is a resident of Oregon and is an incarcerated individual. She presently resides in Oregon.

### 7.

Defendant Colette Peters was at all relevant times the Director for ODOC. Defendant Peters had ultimate oversight over ODOC employees and AICs and was responsible for

**Page 3 of 41 – CIVIL RIGHTS COMPLAINT**

enforcement and compliance with federal law, including the United States Constitution and the mandates of the Prison Litigation Reform Act (PLRA), the Prison Rape Elimination Act of 2003 (PREA), and the laws of the State of Oregon. Defendant Peters approves and signs PREA audits for every ODOC institution in Oregon. She has implemented a zero-tolerance policy for sexually assaulting AICs within ODOC by employees of ODOC. Defendant Peters has led Governor Kate Brown to certify to the United States government that Oregon is meeting all requirements of PREA as necessary to continue to secure federal funding for the State of Oregon.

**8.**

Defendant Brian Belleque was the Deputy Director for ODOC until approximately May 1, 2019, and was responsible for carrying out and implementing all policies of the Director and the Policy Group. He was responsible for the overall safe and secure operation of all ODOC correctional institutions.

**9.**

Defendant Heidi Steward is the current Deputy Director of ODOC, and has held this position since approximately May 1, 2019. Heidi Steward is responsible for carrying out and implementing all policies of the Director and the Policy Group. She is responsible for the overall safe and secure operations of all ODOC correctional institutions. Defendant Heidi Steward was previously the Assistant Director of Correctional Services.

**10.**

Defendant Michael Gower was the Assistant Director of Operations for ODOC until December 2019. He was the direct supervisor of every ODOC Superintendent within ODOC. Defendant Gower had the authority to direct and implement changes within ODOC prisons. He oversaw the budgeting for each institution and approves budget requests for security improvements within ODOC. Defendant Gower was responsible for ensuring that Oregon prisons are safe, civil and productive. Additionally, Defendant Gower was responsible for institutional management, AIC transportation, security threat group management, emergency preparedness and AIC work

**Page 4 of 41 – CIVIL RIGHTS COMPLAINT**

activities. Defendant Gower, as Assistant Director of Operations, was responsible for PREA compliance and the safe and secure operation of ODOC Institutions.

**11.**

Defendant Rob Perrson is the current Assistant Director of Operations for ODOC, and has held this position since approximately December 2019. Previously, Defendant Persson was ODOC's Westside Institutions Administrator, from approximately May 2018 to December 2019, and was directly responsible to the operations of eight ODOC institutions, including CCCF, during that time.

**12.**

Defendant Paula Myers was Superintendent at CCCF during all relevant times. Defendant Myers was responsible for supervising Escalona and all other corrections staff and had control over the activities that happened herein.

**13.**

Defendant Ericka Sage is the ODOC PREA Coordinator. As the PREA Coordinator she would pass along PREA audit recommendations to Defendants Peters, Belleque, Steward, Gower and the CCCF Superintendent and Assistant Superintendent of Security for CCCF for implementation.

**14.**

Defendant Franklin J. Escalona, was a kitchen coordinator at CCCF at all relevant times. Defendant Escalona was thereafter a Correctional Officer at CCCF from March 16, 2020 until he was discharged approximately in or around May 2021.

**15.**

Defendant Leanne Edison was a kitchen coordinator at CCCF at all relevant times.

**16.**

Defendant Cheylan Edison was a kitchen coordinator at CCCF at all relevant times.

**Page 5 of 41 – CIVIL RIGHTS COMPLAINT**

**17.**

Defendant Esequiel Palomo was a kitchen manager at CCCF at all relevant times.

**18.**

Defendant John/Jane Does were kitchen coordinators at CCCF at all relevant times.

**19.**

Defendant John/Jane Doe was a bakery manager at CCCF at all relevant times.

**20.**

Defendants John/Jane Does are security staff at CCCF who knew or should have known about Defendant Escalona's behavior and unauthorized conduct.

**21.**

Defendants John/Jane Does are and have been Behavioral Health Services counselors at CCCF who knew or should have known about Escalona's behavior and unauthorized conduct.

**22.**

Defendants John/Jane Does are and were, at all times relevant, employees of ODOC and/or other state officials whose identities are currently unknown to Plaintiff. All Doe defendants have been personally involved in the violations alleged herein. Plaintiff will amend this complaint to formally name all Doe defendants once their identities are revealed to Plaintiff during discovery. All Doe defendants are sued in their official and individual capacities. All Doe defendants have acted under color of state law at all times relevant to this complaint.

### STATUTE OF LIMITATIONS

**23.**

Plaintiff was unable to file this complaint pursuant within two years of the sexual abuse described herein in accordance with ORS 12.110(1) because she feared further sexual abuse and/or retaliation from Defendant Escalona and other CCCF and ODOC Defendants. Plaintiff did not feel that it was safe to report the abuse due to fear of retaliatory action, including losing her transitional

**Page 6 of 41 – CIVIL RIGHTS COMPLAINT**

leave when she was not at CCCF in 2020-2021. Plaintiff did not feel that it was safe to file this complaint until Defendant Escalona was removed from his position in or around May 2021, and until she was reassured that Defendant Escalona would not be returning to CCCF. Further, after Plaintiff was returned to CCCF custody on May 20, 2021, she experienced additional harassment and retaliation regarding Escalona and continued to be fearful or retaliation form ODOC/CCCF staff.  Plaintiff maintains the statute of limitations was tolled until the time she was able to safely file a civil rights complaint without fear of further sexual abuse and/or retaliation.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

### 24.

Plaintiff has exhausted all available administrative remedies with respect to all claims and all Defendants involved in the events described herein. To the extent that Plaintiff did not exhaust all available administrative remedies, she was excused from doing so or did so after discovery of her injuries. Plaintiff sent a Notice of Tort Claim to the Department of Administrative Services/Risk Management with the State of Oregon within the time period allowed based on her discovery of her injury, fear of retaliation, exhaustion of administrative remedies, and the COVID-19 extension of time limitations for giving notice of civil claims summarized above.


## FACTUAL ALLEGATIONS

### (Coffee Creek Correctional Facility)

### 25.

Coffee Creek Correctional Facility (CCCF) is located in Wilsonville, Oregon and is Oregon's only prison housing female AICs. It also serves as the intake center for all prisoners entering ODOC. The facility opened in 2001 and contains 1,684 beds.

### 26.

CCCF has cell and dormitory housing, work programs, skills training, treatment programs, health services, religious service, physical plant, a central records unit, and administrative areas.

**Page 7 of 41 – CIVIL RIGHTS COMPLAINT**

**27.**

Since opening, CCCF has been the location of numerous sexual assaults, rapes and misconduct by staff against female AICs.

- 2004 – Lt. Jeffrey Allen Barcenas pled guilty to four counts of official misconduct for engaging in sex with a female AIC.

- 2008 – CO Richard Mitchell was accused of coercing female AICs to expose themselves to and perform sexual acts upon Mr. Mitchell.

- 2008 – CO Robert Dunlap was accused of abuse against a female AIC housed in the mental health unit, working in tandem with CO Mitchell to threaten the AIC into performing sex acts on Dunlap.

- 2009 – Paul Golden, a CCCF employee, was convicted of 15 counts of custodial sexual misconduct and the State of Oregon was sued by the female AICs.

- 2009 – Richard Kaleo Rick, a civilian plumber working at CCCF, was convicted, and multiple lawsuits were filed against the State, for Rick's sexual abuse of AICs.

- 2009 – Troy Bryant Austin, a civilian maintenance worker at CCCF, was convicted and the State was sued for Austin's sexual abuse of AICs.

- 2009 – CO Darcy Aaron MacKnight was convicted of custodial sexual misconduct for having sex with a female AIC.

- 2010 – Christopher Don Randall, a Food Services Coordinator, pled guilty to two counts of official misconduct for engaging in sexual intercourse with a female AIC.

- 2012 – Jeremy Joseph Veelle, a Physical Plant employee, was charged with official misconduct for sexually abusing a female AIC.

- 2012 – Shawn Jacob Riley, a civilian employee at CCCF, was arrested and

Ginger G. Mooney, OSB No. 031261
GINGER G. MOONEY, LLC
1017 May Street, Suite 200, Hood River, OR 97031
Telephone (541) 716-5650 ● Facsimile (503) 389-1585
contact@mooneylaw.org

charged with official misconduct and custodial sexual misconduct for sexual acts against a female AIC.

- 2016 – CO Edgar Mickels was arrested and charged with first degree sexual misconduct and three counts of custodial sexual misconduct for engaging in sexual contact with at least one female AIC.

- 2017 – CO Brian Joseph Balzer was convicted of first degree custodial sexual misconduct for his behavior with a female AIC at CCCF. Balzer's victim alleges there were other victims.

- 2017 – Dr. Robert W. Snider was sued by three female AICs alleging they were sexually abused by Dr. Snider during unsupervised examinations while incarcerated at CCCF.

- 2019 – At least 12 female AICs filed federal lawsuits against former ODOC registered nurse Tony Klein and additional ODOC medical staff members, accusing Klein of a long pattern of sexual grooming, assault, battery and retaliation.

- 2019 – Douglas Cloutier, an ODOC kitchen employee, has faced complaints by at least four female AICs for sexual assault and battery.

- 2021 – Richard S. Alberts, Jr., a former CO at CCCF, was convicted on federal charges of smuggling drugs and illicit contraband into CCCF. Alberts also pleaded guilty and was convicted in Washington County Circuit Court on charges of first-degree custodial sexual misconduct for raping a female AIC in CCCF.

/ / /

/ / /

/ / /

/ / /

**Page 9 of 41 – CIVIL RIGHTS COMPLAINT**

## OREGON STATUTES

### 28.

Oregon Revised Statutes 423.020(1)(d) mandates the Oregon Department of Corrections to provide adequate food, clothing, health and medical care, sanitation and security for persons confined.

### 29.

Oregon Revised Statutes 423.075(5)(d) states the Director of the Oregon Department of Corrections shall provide for the safety of all prisoners in the custody of the department.

### 30.

On August 20, 2012, the Department of Justice issued the final rule adopting national standards to prevent, detect, and respond to prison rape, as required by the Prison Rape Elimination Act of 2003 (PREA).

### 31.

ODOC has a zero-tolerance policy for sexual abuse. The PREA is a federal law that seeks to eliminate sexual assaults and sexual misconduct against prisoners. This law applies to all federal and state prisons, jails, police lock-ups, private facilities, juvenile facilities, and community correctional settings. The Bureau of Justice Statistics carries out, annually, a comprehensive statistical review and analysis of the incidence and effects of prison rape. The major provisions of the standards are: general prevention planning, supervision and monitoring, cross gender searches and viewing, training and education, screening, reporting, responsiveness planning, investigations, discipline, medical and mental health, grievances, and audits. ODOC continues its efforts to maintain safety for all AICs and others inside the facilities keeping PREA as a top priority. ODOC in AIC publications, handbooks, posters, fliers, and other types of communications with AICs has created an expectation that ODOC will do everything within its power to protect AICs from staff assault and that ODOC expects AICs to be respected by staff at all times.

Ginger G. Mooney, OSB No. 031261
GINGER G. MOONEY, LLC
1017 May Street, Suite 200, Hood River, OR 97031
Telephone (541) 716-5650 ● Facsimile (503) 389-1585
contact@mooneylaw.org

**PRISON RAPE ELIMINATION ACT**

**32.**

The Prison Rape Elimination Act (PREA) became federal law in 2003. The Oregon Department of Corrections adopted the mandates of PREA in Rule 40.1.13, which was modified in September of 2018.

**33.**

PREA's purpose is to provide for the analysis of the incidence and effects of prison rape in federal, state and local institutions, and to provide information, resources, recommendations and funding to protect individuals from prison rape. PREA seeks to establish a zero-tolerance policy regarding rape and sexual abuse inside correctional facilities. PREA also mandated the publication of standards to ensure compliance and to improve prevention, detection and response strategies in addressing sexual abuse and assault.

**34.**

The requirements of ODOC Policy 40.1.13 and PREA include prevention, planning, investigation, prosecution, and provide counseling and treatment to victims. Oregon identifies itself as being committed to a zero-tolerance standard for sex abuse and sex harassment.

**35.**

The Agency PREA Coordinator is responsible for the development, implementation and oversight of the department's compliance with the PREA standards in all department facilities. Policy 40.1.13 II.A. In order for such coordination to occur, the Operations Division, which Defendant Gower is in charge of, must authorize implementation recommendations. Without the adoption, cooperation and approval of the Operations Division, the Agency PREA Coordinator lacks authority to enact change.

**36.**

The PREA compliance manager is a management staff person designated by the institution functional unit manager, with sufficient time and authority to coordinate the facilities' efforts to

**Page 11 of 41 – CIVIL RIGHTS COMPLAINT**

comply with the federal PREA standards. Policy 40.1.13 II.F. However, absent the approval and direction of the Superintendent and Assistant Superintendent of Security, the PREA Compliance Manager lacks operational authority to make any changes or order anything to occur differently at an institution.

**37.**

Sexual abuse of an AIC by a staff member, contractor or volunteer includes any of the following acts, with or without consent of the AIC, detainee, or resident:

1) Contact between the penis and vulva or the penis and anus including any degree of penetration;

2) Contact between the mouth, the penis, vulva, or anus;

3) Contact between the mouth and any body part where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;

4) Penetration of the anal or genital opening by hand, finger, object, or other instrument, that is unrelated to official duties or where the staff member contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;

5) Any other intentional contact, either directly or through the clothing, of or with the genitalia, anus, groin, breast, inner thigh, or the buttocks that is unrelated to the official duties or where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;

6) Any attempt, threat, or request by a staff member, contractor, or volunteer to engage in the activities described in this section;

7) Any display by a staff member, contractor, or volunteer of his or her uncovered genitalia, buttocks, or breast in the presence of an AIC, detainee or resident; and

**Page 12 of 41 – CIVIL RIGHTS COMPLAINT**

8)      Voyeurism by a staff member, contractor or volunteer. Voyeurism by a staff member, contractor, or volunteer means an invasion of privacy of an AIC by staff for reasons unrelated to official duties, such as peering at AIC who is using a toilet in their cell to perform bodily functions, requiring an AIC to expose their buttocks, genitals, or breasts; or taking images of all or part of an AIC's naked body or of an AIC performing bodily functions.

Policy 40.1.13.II.G.

**38.**

Sexual Harassment is defined as:

Repeated and unwelcome sexual advances, requests for sexual favors, or verbal comments, gestures, or actions of a derogatory or offensive sexual nature by one AIC directed toward another, and repeated verbal comments or gestures of a sexual nature to an AIC by a staff member, contractor, or volunteer, including demeaning references to gender, sexually suggestive or derogatory comments about body or clothing, or obscene language or gestures.

Policy 40.1.13.II.L.

**39.**

The sexual abuse liaison is a management staff person designated by the institution functional unit manager to coordinate response reporting and monitoring of AIC abuse within the institution. The sexual abuse liaison shall be assigned as the Sexual Abuse Response Team (SART) leader.

**40.**

The SART is a team of institution staff consisting of a Behavioral Health Services (BHS) staff member, a Medical Services staff member and the sexual abuse liaison who are designated

**Page 13 of 41 – CIVIL RIGHTS COMPLAINT**

by the functional unit manager to respond to all allegations of AIC sexual abuse or sexual coercion.

**41.**

All staff are covered by the mandates of PREA and Policy 40 including all ODOC employees, OCE employees, contract service providers and volunteers.

**42.**

ODOC Policy 40 mandates that all staff "must be able to recognize the signs of sexual abuse and sexual harassment and understand their responsibility in the detection, prevention, response and reporting of an alleged sexual abuse or sexual harassment."

**43.**

Each facility is required to conduct and document unannounced rounds on all shifts to deter staff sexual abuse and sexual harassment. Staff is prohibited from alerting other staff members that the supervisory rounds are occurring.

**44.**

ODOC shall ensure that each facility it operates develops and documents a staffing plan that provides for adequate levels of staffing to protect AICs against sexual abuse.

**45.**

Policy 40 mandates access to services, including reporting, for AIC victims of any and all sexual abuse or sexual harassment. AICs who are found to have made "bad faith" allegations of sexual abuse will be held accountable through all means available to ODOC, including discipline. It is not known to Plaintiff which ODOC staff members are properly trained in sexual abuse and misconduct investigations.

**46.**

Policy 40 mandates all staff to report "immediately any knowledge, suspicion or information regarding sexual abuse, sexual harassment, retaliation by AIC or staff for reporting or staff neglect or violation of responsibility that may have contributed to such incidents.

**47.**

**Page 14 of 41 – CIVIL RIGHTS COMPLAINT**

Policy 40 sets forth the procedures to be followed when a complaint of sexual abuse or harassment is received. The PREA Compliance Manager shall be responsible for monitoring all AICs and staff to protect from retaliation or harassment by other staff or AICs. Typically, CCCF requests the Oregon State Police to conduct criminal investigations into allegations of sexual abuse inside the prison.

### 48.

ODOC states there is to be no long-term forfeiture of services and programs for victims of sexual abuse and that the safety of the victim is paramount. AICs will be housed in the least restrictive housing, will have timely unimpeded access to emergency medical treatment, necessary post event treatment including coordination with community hospitals, testing for sexually transmitted diseases, comprehensive information and timely access to all lawful pregnancy-related medical services, referral to Behavior Health Services, and communication with a designated sexual abuse liaison regarding further information required.

### 49.

Mental health services are required to be provided for victims of sexual abuse including timely, unimpeded access to appropriate mental health evaluation services without financial cost, comprehensive information on the limits of confidentiality and duty to report, completion of a mental health evaluation to include suicide risk screening, notification of the Officer in Charge and Medical Services regarding recommended actions, and follow up mental health services.

### RESPONSE TO PRIOR PREA INVESTIGATIONS

### 50.

Following the sexual abuse investigations noted in paragraph 40 above, many of the women victims were placed in segregation, lost their jobs and/or housing, and were limited in visits with children and family. The superintendent for CCCF initiated an internal review which found that the facility had inadequate security patrols, rooms without windows or adequate surveillance, an

**Page 15 of 41 – CIVIL RIGHTS COMPLAINT**

overall shortage of surveillance cameras, and too many employees with access to limited private areas. The superintendent adopted a "Rule of Three" which prohibits entry into some parts of the prison unless three people—a mix of staff and AICs—are present.

### 51.

While neither PREA nor ODOC Policy 40 create a private right of action, national standards as implemented by the rule create duties and expectations of staff. Additionally, AICs have rights surrounding "conditions of confinement" under the Eighth Amendment to the United States Constitution. Both the PREA and Oregon policy provide notice to employees regarding expected performance and the parameters of unlawful behavior.

### NICOLETTE HESLEN

### 52.

On May 17, 2018, Nicolette Heslen entered Coffee Creek Correctional Facility (CCCF). Ms. Heslen entered CCCF custody when she was 25 years old.

### 53.

Ms. Heslen began working in the CCCF kitchens in June 2018. Defendant Escalona was a kitchen coordinator until March 2020. Initially Defendant Escalona had appropriate interactions with Ms. Heslen while she worked in the kitchen. Defendant Escalona then became fixated on Ms. Heslen.

### 54.

In or around late September 2018, Defendant Escalona began inappropriately interacting with Ms. Heslen. Defendant Escalona began flirting with Ms. Heslen and leaving inappropriate letters in the kitchen cooler that expressed his desires and feelings for Ms. Heslen. Defendant Escalona wrote and left Heslen over thirty handwritten, unsigned letters.

### 55.

Defendant Escalona's inappropriate sexual behavior toward Ms. Heslen escalated.

**Page 16 of 41 – CIVIL RIGHTS COMPLAINT**

Defendant Escalona began sexually touching Ms. Heslen without her consent, rubbing himself against her and groping her over her clothing. Defendant Escalona's sexual touching would occur in the kitchen cooler, freezer room, vegetation room, and twice in the staff bathroom. Several kitchen staff members, on multiple incidents, witnessed Defendant Escalona grope Ms. Heslen in the freezer room. To Ms. Heslen's knowledge, no complaints or reports were filed by CCCF staff who witnessed or knew of Defendant Escalona's sexual contact with Ms. Heslen.

**56.**

Defendant Escalona used his position to exert power and control over Ms. Heslen and also stalk her. On January 13, 2019, March 6, 2019, March 11, 2019, and April 23, 2019, Defendant Escalona wrote up Ms. Heslen for disciplinary violations in retaliation for her denying his advances. Defendant Escalona would call Ms. Heslen into work when it was not her shift so that he could be around her. Defendant Escalona would watch Ms. Heslen in the visitation area, and make comments to her about her son and male visitors. Defendant Escalona used his staff access to CCCF computer systems to find information about the locations of Ms. Heslen's tattoos and the addresses of Ms. Heslen's family who were on her visitor's list.

**57.**

Ms. Heslen was given transitional leave and left CCCF custody on November 18, 2019. Prior to Ms. Heslen's release, she spoke with a PREA coordinator at CCCF. Ms. Heslen did not reveal any of Defendant Escalona's sexual conduct described herein to the PREA coordinator, or any other ODOC staff, due to fear of retaliation by Defendant Escalona or ODOC, including losing her transitional leave.

**58.**

During Ms. Heslen's transitional leave from CCCF custody, Defendant Escalona attempted to contact Ms. Heslen numerous times and stalked her. Defendant Escalona found Ms. Heslen's Facebook account. From his personal cellphone, he sent her numerous text messages and videos, and called her several times. Ms. Heslen never responded. In January 2020, Defendant Escalona

**Page 17 of 41 – CIVIL RIGHTS COMPLAINT**

sent Ms. Heslen a message through Facebook Messenger using a fake account he had created. Shortly thereafter, Defendant Escalona physically showed up at Ms. Willey's place of employment in Newport, Oregon. Although Defendant Escalona was never successful in achieving face-to-face contact with Ms. Heslen, she lived in constant fear of his continued stalking.

**59.**

During Defendant Escalona's sexual harassment, sexual touching, and stalking of Ms. Heslen, the supervisory Defendants never removed him from his work assignments or placed him under investigation. Following Ms. Heslen's December 21, 2020 Notice of Tort Claim, PREA investigator Meghan Leddy was assigned to investigate Ms. Willey's complaints of sexual harassment. As a result of this investigation, Defendant Escalona was removed from his CCCF employment on or around May 2021.

**60.**

Following a violation of her terms for transitional leave, Ms. Heslen was returned to the custody of ODOC/CCCF on May 20, 2021. She is scheduled for release on April 15, 2022.

**61.**

After her return to custody, Ms. Heslen experienced retaliation and harassments from ODOC employees regarding Defendant Escalon's sexual harassment.

**62.**

As a result of Defendant Escalona's sexual abuse of Ms. Heslen and the other Defendant's failures to act, Ms. Heslen suffered physical assaults to her person, emotional trauma from ongoing abuse and threats, and an ongoing fear of continued harassment. Ms. Heslen was helpless to prevent any further abuse or harassment against her due to fear of retaliation. Ms. Heslen has suffered loss of sleep, anxiety, embarrassment, fright, fear and other forms of emotional and psychological distress. Ms. Heslen continues to suffer from mental distress, anxiety, and fear of continued abuse from Defendant Escalona, particularly following her release from CCCF custody.

**Page 18 of 41 – CIVIL RIGHTS COMPLAINT**

Ms. Heslen also continues to fear of retaliation from ODOC and CCCF Defendants while she remains in their custody and/or supervision.

### 63.

While Ms. Heslen is incarcerated and an AIC at CCCF, Defendants have a special relationship with Ms. Heslen as she is under Defendants' complete control. While Ms. Heslen was on transitional leave, ODOC Defendants had a special relationship with Ms. Heslen as she was under their supervisory control. Following Ms. Heslen's release, ODOC Defendants will continue to have a special relationship with Ms. Heslen as long as she is under ODOC supervision.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### Cruel and Unusual Punishment – Sexual Battery

### 42 U.S.C § 1983 – Violation of Eighth Amendment

### (Defendant Escalona)

### 64.

Plaintiff realleges each and every allegation of paragraphs 1 through 63 and incorporates those allegations herein by this reference.

### 65.

Sexual assault on an inmate is deeply offensive to human dignity and is cruel and unusual punishment under the Eighth Amendment. AICs have a clearly established Eighth Amendment right to be free from sexual abuse. Sexual abuse of an inmate also constitutes excessive force and violates the Due Process Clause of the Fourteenth Amendment.

### 66.

Plaintiff is entitled to be held in a safe and humane conditions of confinement throughout her incarceration. Plaintiff is entitled to be free from unwanted and unwarranted sexual touching and abuse. She is entitled to her own personal bodily integrity pursuant to the parameters of the

**Page 19 of 41 – CIVIL RIGHTS COMPLAINT**

Eighth and Fourteenth Amendments to the United States Constitution. Plaintiff is also entitled to be safe and secure from undue and excessive force while in custody.

**67.**

Defendant Escalona actions violated Plaintiff's protected rights, were an excessive intrusion onto her person without just cause, and amounted to deliberate indifference to Plaintiff's protected rights and her own personal safety. Defendant violated the requirements of the Eighth and Fourteenth Amendment rights held by Plaintiff through the use of excessive force, intentional and abusive sexual contact, and subjecting her to unsafe and inhumane conditions of confinement.

**68.**

The specific acts of Defendant Escalona individually, and those alleged to be deliberately indifferent are more particularly set forth below:

1) Defendant Escalona sexually contacted and harassed Plaintiff, causing Plaintiff offensive sexual contact and significant mental distress. The actions of Defendant Escalona against Plaintiff occurred between September 2018 and January of 2020.

2) The actions of Defendant Escalona committed defined acts of sexual abuse and harassment of an inmate by a staff member as set forth in ODOC Policy 40.1.13.II.G and 40.1.13.II.L.

3) The actions of Defendant Escalona were in violation of existing correctional standards, the United States Constitution, and state and federal laws and rules.

**69.**

Defendant Escalona committed enumerated acts of sexual abuse against Plaintiff. Defendant Escalona used his position of power to abuse Plaintiff, a vulnerable victim trapped under his supervision. Defendant Escalona's actions were not only criminal but also placed Plaintiff, as well as other AICs and correctional staff, in harm's way.

**Page 20 of 41 – CIVIL RIGHTS COMPLAINT**

**70.**

Defendant violated clearly established rights. No reasonable official similarly situated to Defendant Escalona could have believed that their conduct was lawful or within the bounds of reasonable discretion. Defendant Escalona lacks qualified or statutory immunity from suit or liability.

**71.**

As a result of the violations of the constitutional standards set forth herein, Plaintiff suffered physical assaults to her person, severe emotional trauma from ongoing abuse and threats, an ongoing fear of continued harassment, and a significant deterioration in her mental state. Plaintiff is helpless to prevent any further harassment against her due to fear of retaliation. Plaintiff continues to suffer from loss of sleep, anxiety, embarrassment, fright, fear, and other forms of emotional and psychological distress. The acts and omission of Defendant Escalona, taken under color of law, constituted deliberate indifference, and violated Plaintiff's right under the Eighth Amendment to the United States Constitution.

**72.**

As a result of Defendant Escalona's abuse, Plaintiff continues to suffer from mental distress, anxiety, fear of continued abuse, harassment, or retaliation from Defendant Escalona, fear of retaliation from correctional staff during the remainder of her incarceration, and fear of retaliation from ODOC staff so long as she is under ODOC supervision.

**73.**

The Defendant's conduct was well defined by law and Defendant knew or reasonably should have known that his conduct fell below the standard prescribed by law herein and was illegal.

/ / /

/ / /

/ / /

**Page 21 of 41 – CIVIL RIGHTS COMPLAINT**

**74.**

As a result of these constitutional violations, Plaintiff seeks economic and noneconomic damages in a sum to be more fully determined at trial but no less than $1,000,000.00 Plaintiff seeks punitive damages against all Defendants.

**75.**

Plaintiff is further entitled to an award of all relevant attorney fees, expert fees and costs pursuant to 42 U.S.C. § 1988, which provides: "In any action or proceeding to enforce a provision of sections * * * 1983, * * * of this title, * * *, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, * * *. In awarding an attorney's fee under subsection (b) of this section in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee."

### SECOND CLAIM FOR RELEIF

### Deprivation of Federal Civil Rights

### Cruel and Unusual Punishment

### Conditions of Confinement

### (42 U.S.C § 1983 — Violation of Eighth Amendment)

### (All Defendants)

**76.**

Plaintiff realleges each and every allegation of paragraphs 1 through 75 and incorporates those allegations herein by this reference.

**77.**

As a state prisoner, Plaintiff has an Eighth Amendment right to be free from cruel and unusual punishments. Defendants are responsible for providing Plaintiff with appropriate conditions of confinement that do not subject Plaintiff to substantial risk of serious harm. Conditions of confinement must comply with applicable law and policies set forth to protect

**Page 22 of 41 – CIVIL RIGHTS COMPLAINT**

Plaintiff's health and safety.

**78.**

All Defendants failed to ensure that Plaintiff was afforded the appropriate conditions of confinement. Each Defendant knew or should have known about Defendant Escalona's actions. Each Defendant knew or should have known that the conditions of confinement present at CCCF allowed for correctional staff to sexually abuse AICs.

**79.**

Defendants Peters, Belleque, Persson, Steward, Gower, Persson, and Myers know of various technological security solutions that would aid in the prevention and deterrence of sexual assault and abuse in prisons. Technology exists to allow correctional facilities to track AIC and staff movement around the clock. Such a system would alert the institution if a staff member were alone with an AIC within a particular area. Such a system would have monitored Defendant Escalona's movements within CCCF and indicated when he was alone with Plaintiff.

**80.**

Plaintiff's confinement was abnormally harsh, causing her atypical and significant hardship and thereby violated her Eighth Amendment rights. Correctional officials are required to protect AICs from cruel and unusual punishment. Here, upon information and belief, Plaintiff was subjected to cruel and unusual punishment at the hands of Defendant Escalona and to the knowledge of the other Defendants.

**81.**

Defendant Escalona sexually harassed and abused Plaintiff. Plaintiff was unable to leave or break free from the harassment. When Plaintiff resisted Defendant Escalona's harassment and sexual contact, he would initiate disciplinary actions as retaliation. Defendant Escalona made Plaintiff feel that she could not expose this abuse or else she would be punished.

/ / /

/ / /

**Page 23 of 41 – CIVIL RIGHTS COMPLAINT**

**82.**

Plaintiff was denied "the minimal civilized measure of life's necessities…" to such an extent that she has developed lasting anxiety, stress, and depression as a result of the prolonged and continued sexual abuse. These deprivations indicate the cruelest of intentions and constituted abhorrent violations of Plaintiff's Eighth Amendment rights.

**83.**

All Defendants participated in or had knowledge of the conditions of confinement Plaintiff was subjected to and failed to take action and/or disregarded the risk posed to Plaintiff.

**84.**

CCCF staff, including Defendants Edison, Edison, Palomo, and John/Jane Does were aware of Defendant Escalona's sexual harassment and abuse of Plaintiff. No staff members took steps to protect Plaintiff from Defendant Escalona and failed to stop his criminal and unlawful abuse and harassment of her. As a result, Defendant Escalona operated with impunity and continued with sexual abuse and harassment of Plaintiff until she went on transitional leave from prison and he was eventually removed from the prison

**85.**

As a result of the failures of Defendants and ODOC to protect AICs, Plaintiff was abused and harassed by Defendant Escalona.

**86.**

As a direct and proximate result of the actions described herein, Plaintiff sustained actual damages, including harm from prolonged fear, anxiety, and shame, and loss and deprivation of Plaintiff's liberty.

**87.**

The acts and omission of Defendants, taken under color of law, constituted deliberate indifference and violated Plaintiff's right under the Eighth Amendment to the United States Constitution.

**Page 24 of 41 – CIVIL RIGHTS COMPLAINT**

**88.**

As a result of these constitutional violations, Plaintiff suffered repeated sexual abuse and sexual harassment by Defendant Escalona, leaving her with increased mental health challenges. Plaintiff seeks economic and non-economic damages in a sum to be more fully determined at trial but no less than $1,000,000.00. Plaintiff seeks punitive damages against all Defendants.

**89.**

Plaintiff is further entitled to an award of all relevant attorney fees, expert fees and costs pursuant to 42 U.S.C. § 1988, which provides: "In any action or proceeding to enforce a provision of sections * * * 1983, * * * of this title, * * *, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, * * *. In awarding an attorney's fee under subsection (b) of this section in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee."

**THIRD CLAIM FOR RELIEF**

**Deprivation of Federal Civil Right**

**Failure to Protect**

**(42 U.S.C §§ 1983, 1985)**

**(All Defendants)**

**90.**

Plaintiff realleges each and every allegation of paragraphs 1 through 89 and incorporates those allegations herein by this reference.

/ / /

/ / /

/ / /

/ / /

**Page 25 of 41 – CIVIL RIGHTS COMPLAINT**

**91.**

Plaintiff, as an AIC confined to a correctional facility, is entitled to the essential aspects of safe, sanitary and humane confinement including protection from harms and threats to her safety and security under the laws of the State of Oregon and the Eighth Amendment to the United States Constitution.

**92.**

Defendants deprived Plaintiff of her constitutional rights as set forth in Section 1983 of the Civil Rights Act of 1871 when they participated in Defendant Escalona's affirmative acts of sexual abuse against Plaintiff, and when they failed to act pursuant to their legal obligations to protect Plaintiff.

**93.**

Plaintiff is entitled to the full protection of the laws including the Prison Litigation Reform Act (PLRA) and the PREA, which require ODOC and Defendants to protect AICs from abuse, including sexual abuse, to provide protection to vulnerable AICs, intervene to stop abuse, and provide a safe environment to Plaintiff. It is the duty of other staff to report abuse and to protect AICs form future abuse when information is made available to them.

**94.**

Here, CCCF/ODOC officials had knowledge of, ignored, acquiesced, and facilitated the unconstitutional actions of subordinate officials and correctional officers. Specifically, ODOC/CCCF's liabilities are as follows:

1) ODOC/CCCF's failure to timely investigate Defendant Escalona's actions;

2) ODOC/CCCF's failure to provide adequate supervision and training for staff;

3) ODOC/CCCF's failure to provide adequate safeguards and protections for AICs from Defendant Escalona;

**Page 26 of 41 – CIVIL RIGHTS COMPLAINT**

4)  ODOC/CCCF's failure to respond to obvious signs that Defendant Escalona was sexually abusing and harassing Plaintiff, and that he displayed sexual predatory patterns which were known to many staff members including kitchen staff and management at CCCF;

5)  ODOC/CCCF's failure to provide legally mandated counseling as required by provisions of the PREA for the benefit and protection of Plaintiff;

6)  ODOC/CCCF's lack of concern for security and premises defects at CCCF, providing Defendant Escalona access to various secluded areas of CCCF that were known as areas of illegal activity and were not equipped with adequate and properly placed monitoring systems;

7)  ODOC/CCCF's knowledge of Defendant Escalona's actions and their failure to take immediate action to stop Defendant Escalona's actions;

8)  OCOD/CCCF's failure to protect Plaintiff from sexual harassment and intimidation from ODOC staff;

9)  ODOC/CCCF's failure to preserve evidence of Defendant Escalona's actions, by failing to preserve video surveillance of all prison locations where Plaintiff's employment required her to go.

10) ODOC/CCCF's failure to comply with the mandates set forth in PREA, including but not limited to meeting with Plaintiff 30, 60, and 90 days after the incident;

11) ODOC/CCCF's failure to comply with the mandates set forth in PREA;

12) ODOC/CCCF's punishment of Plaintiff for actions of corrupt staff and correctional officers;

13) ODOC/CCCF's failure to ensure that Plaintiff's conditions of confinement complied with constitutional standards.

**Page 27 of 41 – CIVIL RIGHTS COMPLAINT**

**95.**

As a result of the behaviors of the Defendants herein, Plaintiff suffered continuous sexual harassment, repeated sexual abuse, was placed in constant fear for her safety, was denied adequate abuse counseling, was housed in inhuman conditions, and suffered continuous severe mental distress, anxiety, and fear of continued abuse, harassment, and/or retaliation.

**96.**

The long-standing constitutional deprivations committed by supervisory staff were in the face of obvious and notable signs regarding the predatory habits of Defendant Escalona. By information and belief, the supervisory staff Defendants failed to make Defendant Escalona accountable, failed to enforce recommended guidelines for interactions with AICs, and failed to adequately investigate Defendant Escalona's unlawful behavior.

**97.**

Furthermore, the supervisory staff violated Plaintiff's constitutional rights in failing to institute national standards for prison security including failing to inspect staff members coming and going from prison, failing to prevent abuse of staff access to AIC records and information, failing to follow up on location and work production by subordinate staff, failing to demand accountability by subordinate staff, and failing to have safe and adequate investigative procedures for complaints made by prisoners or staff.

**98.**

The acts and omission of Defendants, taken under color of law, constituted deliberate indifference and violated Plaintiff's right under the Eighth Amendment to the United States Constitution.

**99.**

Plaintiff is further entitled to an award of all relevant attorney fees, expert fees and costs pursuant to 42 U.S.C. § 1988, which provides: "In any action or proceeding to enforce a provision of sections * * * 1983, * * * of this title, * * *, the court, in its discretion, may allow the prevailing

**Page 28 of 41 – CIVIL RIGHTS COMPLAINT**

party, other than the United States, a reasonable attorney's fee as part of the costs, * * *. In awarding an attorney's fee under subsection (b) of this section in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee."

### FOURTH CLAIM FOR RELIEF

### Deprivation of Federal Civil Right

### Failure to Supervise

### (42 U.S.C §§ 1983, 1985)

### (Defendants Peters, Belleque, Steward, Gower, Persson, Myers, Sage, Edison, Edison, Palomo, Doe Defendants)

### 100.

Plaintiff realleges each and every allegation of paragraphs 1 through 100 and incorporates those allegations herein by this reference.

### 101.

The constitutional deprivations suffered by Plaintiff are the proximate and direct cause of a non-interested, indifferent, and willfully ignorant supervisory practice by the named Defendants. Supervisors have a constitutional duty to protect prisoners and to provide them with safe and humane conditions of confinement, including the right to be free from sexual abuse and assault by staff. This duty imposed on supervisory staff includes an obligation—under the law—to fully investigate claims of sexual misconduct by staff against prisoners; a mandatory duty to report and address claims of sexual misconduct on prisoners; a duty to maintain a good and constant supervision of male staff supervising female prisoners; and a duty to ensure that AICs are held in constitutionally adequate conditions. The duty is enhanced when the prisoner population is especially vulnerable: if they are physically smaller, and physically weaker.

**Page 29 of 41 – CIVIL RIGHTS COMPLAINT**

**102.**

The long-standing constitutional deprivations committed by supervisory staff were in the face of obvious and notable signs of Defendant Escalona's predatory habits, including Defendant Escalona's desire to be near Plaintiff, his sexual abuse and harassment of Defendant Escalona witnessed by other staff members, his use of institutional records to obtain information about Plaintiff, and his repeated efforts to contact Plaintiff both during and after her incarceration. Nonetheless, Defendant Escalona was allowed by supervisory staff to set his own schedules, order AICs to work beyond their assigned shift schedules, and have unchaperoned access to incarcerated women. The supervisory staff Defendants failed to make Defendant Escalona accountable, failed to enforce recommended guidelines for interactions with AICs, and failed to complete any investigation into Defendant Escalona's unlawful and abhorrent behavior.

**103.**

The supervisory staff Defendants violated constitutional and state and federal rules and laws in the following particulars:

1) Failure to implement adequate AIC monitoring and managing process after the repeated sexual violations at CCCF noted above;

2) Failure to provide adequate safeguards to keep AICs from meeting with staff alone or with inadequate supervision;

3) Failure to note and respond to evidence of abuse;

4) Purposeful disregard of prisoners' complaints;

5) Failure to investigate credible AIC complaints;

6) Failure by any supervisory staff to stop the sexual abuse and harassment of the Plaintiff in this action;

7) Toleration and encouragement of an atmosphere of bullying, threats, and retaliation against AICs who came forward with concerns about the sexual behavior of staff;

**Page 30 of 41 – CIVIL RIGHTS COMPLAINT**

8) Toleration and encouragement of staff taking proactive measures to discourage complaints about sexual behaviors; and

9) Abiding by an informal policy approach that staff members are more important than prisoners and must be protected from any and all complaints by prisoners.

**104.**

Furthermore, the supervisory staff violated Plaintiff's constitutional rights in failing to institute national standards for prison security including failing to inspect staff members coming and going from prison, failing to prevent abuse of staff access to AIC records and information, failing to follow up on location and work production by subordinate staff, failing to demand accountability by subordinate staff, and failing to have safe and adequate investigative procedures for complaints made by prisoners or staff.

**105.**

As a result of the unconstitutional practice by supervisors—which was promoted, allowed or facilitated within CCCF—female informants, witnesses, or victims of sexual abuse were ignored, or retaliated against for filing complaints of sexual abuse.

**106.**

Defendants failed to adequately train and supervise Defendant Escalona and the other individual Defendants before and during the incidents and maintained policies that allowed and condoned the acts and omissions of the correctional staff and which showed deliberate indifference to the rights of Plaintiff under the Eighth Amendment to the United States Constitution.

**107.**

As a result of the violations of the Constitution set forth herein, Plaintiff seeks economic and noneconomic damages in a sum to be more fully determined at trial but no less than $1,000,000.00. Plaintiff seeks punitive damages against Defendants.

/ / /

**Page 31 of 41 – CIVIL RIGHTS COMPLAINT**

**108.**

Plaintiff is further entitled to an award of all relevant attorney fees, expert fees and costs pursuant to 42 U.S.C. § 1988, which provides: "In any action or proceeding to enforce a provision of sections * * * 1983, * * * of this title, * * *, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, * * *. In awarding an attorney's fee under subsection (b) of this section in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee."

**FIFTH CLAIM FOR RELEIF**

**Deprivation of Federal Civil Right**

**Failure to Protect, Cruel and Unusual Punishment, and CCCF's**

**Liability for the Actions of its Employees**

**(42 U.S.C § 1983 – Violation of Eighth Amendment)**

**(All Defendants)**

**109.**

Plaintiff realleges each and every allegation in paragraphs 1 through 109 and incorporates those allegations set forth herein.

**110.**

Defendants deprived Plaintiff of her constitutional rights as set forth in Section 1983 of the Civil Rights Act of 1871 when they participated in Defendant Escalona's affirmative acts of sexual abuse against Plaintiff, and when they failed to act pursuant to their legal obligations to protect Plaintiff.

**111.**

Here, CCCF/ODOC officials had knowledge of, ignored, acquiesced, and facilitated the unconstitutional actions of subordinate officials and correctional staff. Specifically,

**Page 32 of 41 – CIVIL RIGHTS COMPLAINT**

ODOC/CCCF's liabilities are as follows:

1) ODOC/CCCF's failure to timely investigate Defendant Escalona's actions;

2) ODOC/CCCF's failure to provide adequate supervision and training for staff;

3) ODOC/CCCF's failure to provide adequate safeguards to protect inmates from Defendant Escalona;

4) ODOC/CCCF's failure to respond to obvious signs that Defendant Escalona was sexually abusing and harassing Plaintiff, and that he displayed sexual predatory patterns which were known to many staff members including kitchen staff and management at CCCF;

5) ODOC/CCCF's failure to provide legally mandated counseling as required by the provisions of the PREA for the benefit and protection of Plaintiff;

6) ODOC/CCCF's lack of concern for security and premises defects at CCCF resulting in Defendant Escalona's access to various secluded areas that were not equipped with adequate or properly placed monitoring systems;

7) ODOC/CCCF's knowledge of Defendant Escalona's actions and failure to take immediate action to stop Defendant Escalona's actions;

8) ODOC/CCCF's failure to protect Plaintiff from sexual harassment and intimidation from correctional staff;

9) ODOC/CCCF's failure to preserve evidence of Defendant Escalona's actions, by failing to preserve video surveillance of all prison locations where Plaintiff's employment required her to go.

**Page 33 of 41 – CIVIL RIGHTS COMPLAINT**

10) ODOC/CCCF's failure to comply with the mandates set forth in PREA, including but not limited to meeting with Plaintiff 30, 60, and 90 days after the incident;

11) ODOC/CCCF's failure to comply with the mandates set forth in PREA, including but not limited to advising Plaintiff that she could have an advocate present during all interviews; and

12) ODOC/CCCF's punishment of Plaintiff for the actions of corrupt correctional officers.

**112.**

The long-standing constitutional deprivations committed by supervisory staff were in the face of obvious and notable signs of Defendant Escalona's predatory habits, including Defendant Escalona's desire to be near Plaintiff, his sexual abuse and harassment of Defendant Escalona witnessed by other staff members, his use of institutional records to obtain information about Plaintiff, and his repeated efforts to contact Plaintiff both during and after her incarceration. Nonetheless, Defendant Escalona was allowed by supervisory staff to set his own schedules, order AICs to work beyond their assigned shift schedules, and have unchaperoned access to incarcerated women. The supervisory staff Defendants failed to make Defendant Escalona accountable, failed to enforce recommended guidelines for interactions with AICs, and failed to complete any investigation into Defendant Escalona's unlawful and abhorrent behavior.

**113.**

Furthermore, the supervisory staff violated Plaintiff's constitutional rights in failing to institute national standards for prison security including failing to inspect staff members coming and going from prison, failing to prevent abuse of staff access to AIC records and information, failing to follow up on location and work production by subordinate staff, failing to demand accountability by subordinate staff, and failing to have safe and adequate investigative procedures for complaints made by prisoners or staff.

**Page 34 of 41 – CIVIL RIGHTS COMPLAINT**

**114.**

As a result of the unconstitutional practice by supervisors—which was promoted, allowed or facilitated within CCCF—female informants, witnesses, or victims of sexual abuse were ignored, or retaliated against for filing complaints of sexual abuse. As a result of the behaviors of the Defendants herein, Plaintiff suffered continuous sexual harassment, repeated sexual abuse, was placed in constant fear for her safety, was denied adequate abuse counseling, was held in inhumane conditions, and suffered continuous severe mental distress, anxiety, and fear of continued abuse, harassment, and/or retaliation.

**115.**

As a result of these constitutional violations, Plaintiff seeks noneconomic damages in a sum to be more fully determined at trial but no less than $1,000,000.00. Plaintiff seeks punitive damages against all Defendants. Plaintiff requests that the Court award economic damages for future psychological or psychiatric treatment and services, to treat her for the sexual abuse in an amount of $250,000.00.

**116.**

Plaintiff is further entitled to an award of all relevant attorney fees, expert fees and costs pursuant to 42 U.S.C. § 1988, which provides: "In any action or proceeding to enforce a provision of sections * * * 1983, * * * of this title, * * *, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, * * *. In awarding an attorney's fee under subsection (b) of this section in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee."

/ / /

/ / /

/ / /

/ / /

**Page 35 of 41 – CIVIL RIGHTS COMPLAINT**

**SIXTH CLAIM FOR RELEIF**

**Negligence**

**(All Defendants)**

**117.**

Plaintiff realleges each and every allegation set forth in paragraphs 1 through 116 and incorporates those allegations set forth herein.

**118.**

Defendants were aware of a rampant problem at CCCF regarding employees of the State of Oregon sexually abusing female inmates. Despite this knowledge, they did nothing to protect individuals like Plaintiff. Defendant's specific failures are set forth in the balance of this claim.

**119.**

The deprivations suffered by Plaintiff are the proximate and direct cause of her physical and psychological harm because of a non-interested, indifferent, and willfully ignorant supervisory practice by the named Defendants.

**120.**

The ODOC supervisors and security staff have a constitutional duty to protect prisoners and to provide them with safe and humane conditions of confinement including the right to be free from sexual abuse and assault by staff.

**121.**

This duty imposed on supervisory and security staff includes an obligation under the law to fully investigate claims of sexual misconduct by staff against prisoners, a mandatory duty to report and address claims of sexual abuse on prisoners, a duty to maintain a good and constant supervision of male staff supervising female prisoners, and a duty to ensure that AICs are held in constitutionally adequate conditions.

/ / /

**Page 36 of 41 – CIVIL RIGHTS COMPLAINT**

Ginger G. Mooney, OSB No. 031261
GINGER G. MOONEY, LLC
1017 May Street, Suite 200, Hood River, OR 97031
Telephone (541) 716-5650 ● Facsimile (503) 389-1585
contact@mooneylaw.org

**122.**

The duty is enhanced when the prisoner population is especially vulnerable: if they are physically smaller, and physically weaker.

**123.**

The supervisory staff Defendants failed and were negligent in the following particulars:

1) Failure to implement adequate AIC monitoring and managing process after the repeated sexual violations at CCCF noted above;

2) Failure to provide adequate safeguards to keep AICs from meeting with staff alone or with inadequate supervision;

3) Failure to note and respond to evidence of abuse;

4) Purposeful disregard of prisoners' complaints;

5) Failure to investigate credible AIC complaints;

6) Failure by any supervisory staff to investigate complaints and obvious signs of abuse;

7) Failure by any supervisory staff to stop the sexual harassment and abuse of the Plaintiff in this action;

8) Toleration and encouragement of an atmosphere of bullying, threats and retaliation against AICs who came forward with concerns about the sexual behavior of staff;

9) Toleration and encouragement of staff taking proactive measures to discourage complaints about sexual behaviors;

10) Abiding by an informal policy approach that staff members are more important than AICs and must be protected from any and all complaints by AICs;

11) Failure to object, stop, or discipline Defendant Escalona for his obvious and repeated sexual abuse and harassment of Plaintiff on a near daily

**Page 37 of 41 – CIVIL RIGHTS COMPLAINT**

basis;

12) Willfully ignoring clear violations of restrictions on contact and behavior permitted between staff and AICs;

13) Willfully ignoring clear signs of "grooming" and sexualized behavior by staff toward AICs; and

14) Failing to implement adequate AIC monitoring and managing process after the repeated sexual violations at CCCF noted above.

**124.**

The statute and administrative rules provide for conduct and behavior expected by corrections staff towards AICs. Included in the expected behavior is a zero tolerance for sexual contact between staff and AICs, zero tolerance for sexual battery between staff and AICs, proper training of staff to detect grooming behaviors, and proper training to staff to detect, identify and stop sexual misconduct by staff towards AICs.

**125.**

The failures by the individual Defendants and the State of Oregon to comply with known and existing standards of behavior and conduct were the direct cause of the sexual battery suffered by Plaintiff. The failure to adhere to known expected standards was a deviation from the existing standard of care and it was foreseeable that Defendant Escalona would perpetrate sexual abuse and harassment against Plaintiff.

**126.**

As a result of the negligence and violations of the standard of care by the Defendants and the State of Oregon, Plaintiff was sexually abused, sexually harassed, and suffered significant emotional damages to her non-economic loss of no less than $1,000,000.00. Plaintiff may require extensive future mental health treatment for her mental health conditions brought on by the sexual abuse in an amount to be calculated at trial by no less than $250,000.00.

*/ / /*

**Page 38 of 41 – CIVIL RIGHTS COMPLAINT**

Ginger G. Mooney, OSB No. 031261
GINGER G. MOONEY, LLC
1017 May Street, Suite 200, Hood River, OR 97031
Telephone (541) 716-5650 ● Facsimile (503) 389-1585
contact@mooneylaw.org

**127.**

Plaintiff is further entitled to an award of all relevant attorney fees, expert fees and costs pursuant to 42 U.S.C. § 1988, which provides: "In any action or proceeding to enforce a provision of sections * * * 1983, * * * of this title, * * *, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, * * *. In awarding an attorney's fee under subsection (b) of this section in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee."

### SEVENTH CLAIM FOR RELIEF

### BATTERY / SEXUAL ASSAULT/ *Respondeat Superior*

### (Defendant State of Oregon)

**128.**

Plaintiff realleges each and every allegation set forth in paragraphs 1 through 127 and incorporates those allegations set forth herein.

**129.**

An employer is responsible for harm caused by the wrongful conduct of its employees while acting within the scope of their employment.

**130.**

While acting in the course and scope of his agency for Defendants Oregon Department of Corrections and the State of Oregon, Defendant Escalona sexually harassed and sexually abused Plaintiff as described in paragraphs 53–63.

**131.**

Those acts constituted harmful and offensive touching of Plaintiff and sexual harassment to which she did not and could not consent. As a result and consequence of Defendant Escalona's sexual abuse and harassment, Plaintiff suffered damages alleged in paragraphs 64–75.

**Page 39 of 41 – CIVIL RIGHTS COMPLAINT**

**132.**

At all times herein mentioned, Defendant Escalona's acts were motivated to serve the State of Oregon and the Oregon Department of Corrections for the purpose of furthering Defendant Escalona's assigned duties as an employee of the State, and using the legal and practical authority he had in that capacity. Defendant State of Oregon is responsible for the harm because Defendant Escalona was acting as an employee of the State when the incidents occurred.

**133.**

As a result of these constitutional violations, Plaintiff seeks noneconomic damages in a sum to be more fully determined at trial but no less than $1,000,000.00. Plaintiff seeks punitive damages against all Defendants. Plaintiff requests that the Court award economic damages for future psychological or psychiatric treatment and services, to treat her for the mental and emotional abuse in an amount of $250,000.00.

**134.**

Plaintiff is further entitled to an award of all relevant attorney fees, expert fees and costs pursuant to 42 U.S.C. § 1988, which provides: "In any action or proceeding to enforce a provision of sections * * * 1983, * * * of this title, * * *, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, * * *. In awarding an attorney's fee under subsection (b) of this section in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee."

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays that this Court will enter a Judgment in her favor, and against Defendants, as follows:

    A.    Finding that any or all Defendants violated her protected constitutional

            rights;

**Page 40 of 41 – CIVIL RIGHTS COMPLAINT**

B.    Findings that supervisors failed to properly supervise subordinate staff which resulted in the opportunities for Defendant Escalona to sexually abuse and harass Plaintiff;

C.    Failure to properly train staff to detect sexual behavior and grooming behavior by staff;

D.    Findings that as a result of the constitutional violations alleged herein Plaintiff has sustained harm and damages in an amount no less than $1,000,000.00;

E.    Findings that the cause of the constitutional violations is intentional or so grossly and deliberately indifferent to justify the award of punitive damages against each named Defendant in a sum no less than $100,000.00 each;

F.    Findings that Plaintiff was subject to sexual assault as a result of the actions of individual in the employment of the State of Oregon;

G.    Findings that Plaintiff was held in unlawful conditions of confinement;

H.    Finding of future damages in the amount of $250,000.00

I.    For an award of economic and noneconomic damages in an amount to be proven at trial, but not less than $500,000.00

J.    For an award of punitive damages in an amount to be proven at trial;

K.    For Plaintiff's reasonable attorney fees, costs, and disbursements; and

L.    For such other relief as the law permits and justice requires.


DATED this 1st day of April, 2022.

Respectfully submitted,

s/ Ginger G. Mooney
Ginger G. Mooney, OSB#: 031261
Attorney for Plaintiff

**Page 41 of 41 – CIVIL RIGHTS COMPLAINT**